1716 SPS The single most important and usually dispositive source for construing the claim term scope and meaning is, of course, the patent specification. And as this Court has repeatedly held, it is error to place undue emphasis on or otherwise elevate extrinsic dictionary sources over the specification. But despite that principle, the Board here in reversing the examiner's decision as to 52 claims based on three claim terms did just that. It sui sponte relied on extrinsic handbook or online dictionary sources to arrive at a construction that is divorced from the specification itself and as a result failed to apply these and thus erred in reversing the examiner's rejection based on those terms. With respect to the term axial seal, the Board, as I indicated, started off with a handbook dictionary source that no party had ever cited or the examiner had never cited and used that as the ordinary source or, excuse me, the ordinary usage and then merely cited just one portion of the specification that doesn't speak to how a seal is formed and it concluded based on that. If anything, the dictionary definition confirmed what would be the ordinary meaning of the word seal and it's got to be something more than a connection, correct? Not in this context, Your Honor, because as the specification itself makes repeatedly clear from the beginning of the patent and throughout and as the parties essentially agree, the specification repeatedly teaches that you can form a seal in this context by having the three valve elements come into abutment or move into abutment or abut each other. In other words, they are joined to one another and shown as to be sufficient by being in such abutment and it further shows, contrary to the Board's construction and the way it So that all speaks to the conclusion that the specification here is inconsistent with the Board construction that said you can't have a seal when the three valve elements are shown to be so adjoined or abutted to one another as to be connected. It seems to me that your real complaint here is that the Board didn't properly interpret Hasekawa. That is with respect to two of the issues put aside, the spoke wheel question. And you know, you didn't put in any extra affidavit as to what Hasekawa disclosed and your brief is asking us to sit there and look at these figures with respect to Hasekawa and the patent and to compare them and we're not in a position to do that and it's very difficult to look at those figures and it strikes me that there's not really a claim construction issue here but an issue of what Hasekawa discloses and how are we supposed to know that without help from you in the way of expert testimony? If I can give two answers to that, Your Honor. First, the Board itself said that this issue, especially six times on three pages, the 812, 813 and 817 of its opinion, that this issue turned on, quote, an issue of interpretation. And so when it was referencing Hasekawa but said explicitly and repeatedly that the issue was one of interpretation. So it was addressing Hasekawa but did so explicitly on the claim construction issue of whether there can be a seal when the valve elements are, quote, unquote, connected. And it never said a thing about the specification or addressed anything in the specification that repeatedly shows having a seal formed by valve elements that are abutted. And otherwise, with respect to Hasekawa's disclosure itself, no such evidence is necessary. Hasekawa itself, and it's agreed to by the parties and found by the Board, discloses these valve elements as being connected to each other. And if the Court were to look at 360… …in this aspect of it. And the paragraph in Hasekawa that's cited by the Board, cited by both the parties on this, explicitly addresses how to, quote, address leakage in the valve's open position, the relevant position for an axial seal. But it doesn't disclose a seal. It doesn't use the word seal, but it describes in that paragraph on 361, lines 26 through 46, the ways in which to address leakage, when there's leakage. It cites leakage as the problem and then discloses that there's a hole that goes out to a drainage pipe, in other words, a leakage space, just like in the 376 patent. And then it says, in addition, in other words, another reason, another way to address the problem of leakage is you have the three valve bodies in Hasekawa being raised and, quote, connected to one another as shown in figure one in the dotted line portion, that everyone agrees is showing those valve bodies connected to each other. And the paragraph is explicitly addressing how to deal with, prevent, control leakage in that context and says further in that paragraph, and in this way, by using these ways to address leakage, including having connected, you ensure that the fluid on one side of the valve will, will never mix with fluid on the other side of the valve. So it's explicitly addressing leakage, in other words, describing a seal that can be formed, that is formed, by having these three valve bodies joined and connected to one another to control leakage. So it's explicit on its face. And with respect to the claim construction, the emphasis that the board itself put on in deciding this issue, it ignored all the disclosures, again, agreed to by the parties, that four times within the 376 specification itself, it discloses that seals do have leaks. There are, there are leaks in it. And that's inconsistent with what the board did in applying its handbook to say that the Hasekawa reference doesn't prevent leakage. But even the, even that handbook it used says a seal is something that controls or stops leakage. Well, the controls part is consistent with the specification discloses as, as it being sufficient to stop or address or control leakage. Even though there is leakage, there can be leakage, there are just other measures to address it, like the hole in Hasekawa, like the leakage space in the patent itself. Let me ask you about the spoke wheel question, because if I understand correctly, with respect to claim 60 and, and on here, the, the basis for the failure to find the anticipation is that Hasekawa didn't have a spoke wheel, right? And now it seems to me you're saying, well, the board found claim 20 obvious on the spoke wheel question, but you didn't raise the obviousness question and you're saying that we should go ahead and address the obviousness question and require the board to address the obviousness question because that's necessary to be consistent with its action on claim 20, right? More or less. The less part, Your Honor, with respect is we do contest in Hasekawa by agreement of the parties and what the board found does disclose a spoke wheel. There's agreement on the structure of Hasekawa and per the examiner's conclusion that this turned on claim construction, the proper claim construction. Okay, well that's, okay, I understand. You did make that argument. It's a different argument. The one I'm talking about is saying that it's inconsistent with the board's ruling on the obviousness of claim 20. That's right, Your Honor. And so what, but it doesn't seem to me that QI press stands for the proposition that the board is obligated to create for you a new ground of rejection, which you didn't raise and you didn't raise the obviousness question with respect to claim 60 and so on with respect to the spoke wheel, right? Essentially, essentially that's right. But if I may, very, very much like, in fact, probably more so than in QI press controls, we did raise that the other spoke wheel claims, which are virtually identical to the claims in dispute here, 60 through 63 and 65 through 67, we did raise that those spoke wheel claims are obvious over these same two references with respect to not just claim 20, but also claim 35, 48, 53. The board's decision at A18 itself references that as much. And the board, as you saw, declined to apply waiver to SUDMO when it had not made an argument challenging the combination of Hosokawa and Burmester because it had made similar arguments. We surely made at least similar arguments. We raised those two references with respect to the spoke wheel claims to the board, to the examiner, and they are virtually identical. I'm not understanding. I want to make sure that I get this right. With respect to claim 60 and so on, my understanding was that you were asserting anticipation over Hosokawa, but that you didn't raise obviousness. Am I wrong about that? Obviousness with respect to those two references. That's fair to say. We noted it, but it wasn't a developed argument. It focused on anticipation. Okay. And my point on that is, Your Honor, is that there is an obligation on behalf of the PTO, unlike a district court, for example, to address claims that it has knowledge of, to use QI press control as a language, that it has knowledge of as being invalid, and especially where there would be inconsistent results. And these spoke wheel claims were treated as identical for all purposes by the examiner and by the board. The board's decision itself makes that clear. The only difference is that Hosokawa and Burmester were used by the board to find claim 20 invalid as obvious, and for that matter, you could say claim 35, 48, and 53 as obvious as well. It decided those on a different basis, the axial seal. But with respect to these 60 through 63 and 65 through 67, despite them being identical claims with those same references before the board, and in fact, those references being used to find obvious, those spoke wheel claims, it should, in these limited circumstances, have the obligation to enter a new rejection on that basis. That's consistent with the duty to the public that the Patent Office owes in this limited circumstances here, where it has knowledge and has before it the same references and, for all intents and purposes, identical claims. That's what QI press control, I think, emphasizes that point. So are you saying the PTO can address all of these questions without any type of argument or evidence presented by the parties? I would say, Your Honor, in the limited circumstance where you have, for all intents and purposes, identical claims with the same references, and in a circumstance where the same arguments are being made, where the claims are identical, that it would, in this circumstance, as an individual district court, has that obligation to address claims that it finds otherwise invalid. It can't just sit there when it knows that those claims are invalid as obvious and let them stand in the face of a claim it knows to be obvious, and in this case, even held as much, which is more than even, I think, the circumstance was in QI press controls. So for that reason, we do respectfully request that that rejection for obviousness, at the least, should be applied to the board's decision here with respect to spoked wheel. And I think, unless the court has further questions on axial seal, I'll address the last term, movable, briefly, and our construction, our analysis on that is straightforward. The board indicated three times that it was using or applying a construction of the movable towards limitation as meaning that it had to be engaged for its application of the prior art, something that is moving, or as the board said, actually moves or slides, indicating that movable required actual movement. And there's an indication in between those three times the board said as much that it said movement or capable of movement, but I think the context makes clear it was requiring actual movement, and that makes sense because before the patent office, SUDMO itself had argued when it was dealing with representative claims here and using Representative Claim 68, that it required that the claim must, you know, is moved, that the flow barrier element is moved. So with that context, that SUDMO itself was arguing an actual movement, that claim construction would be wrong as well because now, as everybody agrees, movable means capable of movement, and that's what the specification discloses as well. And the Hosokawa reference, its core disclosure here about the flow barrier element in Hosokawa called the middle valve body is clear that this is something, this is at 359 lines 29 to 35, it is a structure that freely slides, freely slides along the main valve stem that goes through the center of this Hosokawa valve. And with that as the core disclosure and with agreement as well that the cleaning fluid, this pressurized cleaning fluid used to clean valves, flows through the bottom and would hit the bottom of the middle valve body, then it would make that a valve element that is capable of movement towards the first element. And so as a matter of claim construction and based on what Hosokawa itself discloses, the board erred in that respect as well. Okay. Thank you, Mr. Levine. Thank you. Mr. Levine, is that how you pronounce it? Levine, Your Honor. Levine. I have a 50% chance of it. Address the inconsistency, would you, a seeming inconsistency between the board's treatment of Claim 20 and Claim 60 and so forth? Your Honor, we don't see the actual inconsistency. In Claim 20, the board addressed the combination of Hosokawa and Burmester 134 with respect to the spoked wheel, spoked valve, or rather the integrated valve element that was disclosed in Burmester 134. I'm not sure that I understand why it's not inconsistent. Why isn't it inconsistent? I mean, it may be consistent in the sense that with respect to one of them, the issue was raised, and with respect to the other one, the obviousness issue wasn't raised. But if you assume that the obviousness issue was properly raised with respect to both of them, isn't there an inconsistent result here? No, Your Honor, because Claim 60 as well as Claim 61 through 63 and 65 through 67 recite additional limitations that are not recited in Claim 20, including two terms that are actually at issue here, namely the axial seal limitation and the limitation where the full barrier element is at least movable towards the first closing element when the second cleaning fluid is applied. So what you're saying is that even if they got it wrong as to the spoked wheel element, there were these other elements which were present in Hosokawa? I'm sorry, I have a question. What you're saying is that Claim 60 and so on has the same limitations, the axial seal limitations and the movable limitations as appear in the other claims which were held to be not present in Hosokawa? That's correct. Those are among the additional limitations that are recited in Claim 60 through 63 and 65 through 67. But to the extent that the Court is inclined to apply the combination of Hosokawa and Burmeister 134 to Claim 60 through 63 and 65 through 67, we submit that the Court should address the merits of that combination, especially with respect to Sumo's argument that one of the integrated weld-in parts that SPS is pointing to as a full barrier element and as a spoked wheel in Burmeister 134 is not actually a full barrier element. If you carefully review Burmeister 134, it discloses that the spoked valve or the integrated weld-in part that SPS relies on is not actually located anywhere in the valve of Burmeister 134 where it could act as a full barrier element. It actually is located at the bottom or remotely. It is explicitly disclosed as being located remotely from that area so as to not cause any flow problems. And this is explicitly disclosed at A827, A851, A853, A847, A848, A864, and A874. So one of our disclosures in the art would not combine Burmeister 134 with Hosokawa because that integrated weld-in part is not designed to be a full barrier element. And furthermore, if you combine it with Hosokawa, the result is increased flow of cleaning fluid between the valves of the, between the closing elements of Hosokawa. And Hosokawa explicitly requires that the drainage of cleaning fluid be kept to a minimum and discharged at a small amount at a time. So, reason number one, the spoke valve in Burmeister 134 is not designed to be a full barrier element. And second, if it was integrated into Hosokawa, it would contradict Hosokawa's teachings and result in a device that doesn't work the way Hosokawa intends its valve to work. So, there are sort of two, there are two issues before the court today. One, one is the claim construction, divorce claim construction of three terms. Axial seals, spoke wheel, and the longer term, where in the full barrier element is at least movable towards the first closing element, when the second closing element is lifted and when cleaning medium is applied. Second issue is the board's application of those constructions. To the prior art, part of which we just discussed. With respect to claim construction, the legal landscape has changed somewhat since the parties briefed this case. And pursuant to the Supreme Court's decision in Teva Pharmaceuticals v. Sandoz and this court's subsequent decision in Enricozzo, the board's underlying factual determinations that bear on, that consider as stringent evidence are reviewable for substantial evidence. Where, while the ultimate claim construction is reviewed de novo. Here, the board made factual findings regarding the ordinary usage of the terms seal and spoke wheel. And those factual findings are supported by substantial evidence in the record, including the evidence that is set forth in Sudmo's responsive brief. But what you seem to be saying is we don't need to reach the spoke wheel issue because the board's decision could be sustained on the ground of the axial seal limitation and the movable limitation. Is that correct? The board's decision should be affirmed on the basis of those two terms, in addition to the fact that, in addition to the reasons, the additional reason that one of the artists would not combine Hosokawa and Burmeister 134 to reach the spoke wheel limitation. Where do I find Claim 60 in the record here? Claim 60 is appended to Sudmo's responsive brief. This is on page, on pages A744 through 745. 744.  So, with respect, returning to the board's claim construction, with respect to its reliance on dictionary definitions, I just want to turn the court to its decision in Phillips where it states that a judge who encounters a claim term while reading the patent might consult a general purpose or specialized dictionary to begin to understand the meaning of the remainder of the patent to determine how the patentee has used this term. Now here, in construing the term seal, the board checked the specification to see if it contained a formal definition of that term, then consulted Mark's standard handbook for mechanical engineers to determine the ordinary usage of the term seal. Following that, the board, according to that handbook, the ordinary usage of the term seal denotes materials used to control or stop leakage of fluids through mechanical clearances when fluids are under pressure. The board then went back to the specification and confirmed that the ordinary usage of the term seal is consistent with the usage of that term in the 376 patent. And as an example of that consistency, the board identified a part of the specification discussing that a seal is formed when the sealing elements of one of the closing elements abut in a seal-forming fashion with their seats. Where in Claim 60 does the term axial seal limitation appear? I mean, I see the word axial, but it seems to be different from the other claims. And where does the movable limitation appear? Claim 60, the axial seal limitation does not appear in Claim 60. It appears in Claim 65. Well, let's stick with Claim 60. Because what I was asking, I thought you were saying that we didn't need to reach the spoke wheel element, the decision, because axial seal is still present. So you're saying now axial seal is not present in Claim 60? Just to clarify what I said before, the axial seal, we don't need to reach the spoke wheel. We don't need to address it because there are additional limitations in 60-63 and 65-67, including in some claims the axial seal limitation. Well, stick me with Claim 60. Okay. You say the axial seal limitation is not in Claim 60. That's correct. Is there a movable limitation in Claim 60? No, Your Honor. Okay. So we do need to reach the spoke wheel issue. And I come back to the question of why did the Board reach a different decision about spoke wheel in Claim 20 than in Claim 60? Well, the Board reached that decision because, in the Board's view, the integrated welded elements of Burmester 134 met the spoke wheel limitation of Claim 20. But in Claim 60, the difference between Claim 20 and Claim 60 includes the additional requirement that the spoke wheel has a plurality of spokes with openness there between at least partially defined and slightly spaced. That is not present in Claim 20, and it was not addressed by the Board. But, and just as I mentioned a few minutes ago, one of the ordinances in the yard would not have combined Hosokawa with Burmester 134 because the integrated welding part that is being relied on as a spoke wheel does not actually function. It's not designed to be a flow barrier element. It does not function as a flow barrier element. And if it's integrated into Hosokawa, it would result in increased fluid flow, which is directly contradictory to what Hosokawa teaches. Well, suppose that the limitations in 20 and 60 were exactly the same. Would the Board be obligated to raise the issue sui sponte with respect to Claim 60 or not? No, Your Honor, because Claim 60 was never addressed as being obvious based on a combination of Hosokawa and Burmester 134. And so... Was Claim 20 challenged on that ground? Yes, Your Honor. As unobvious? Yes, Your Honor. But not Claim 60, nor the rest of the range, 60 through 63, or 65 through 67. That argument was never addressed by SPX in any of the proceedings before the Patent Trial and Appeal Board. And as Your Honor has noticed, SPX said that they noted the one of three arguments, but the part of the brief that they relied on explicitly and only discusses anticipation and in nowhere mentions Burmester 134. So they're essentially asking the Board... There's essentially an argument that the Board should have, in synopsis of all the 50-plus claims here, searched for additional grounds of rejection for Claim 60 through 63 and 65 through 67. Well, your opponent says that you should have done that without any argument or any challenge. What's your response to that? I'm sorry, I didn't hear the question. Your opponent said that you should have done that even without them raising it or arguing, for example, that Claim 60 was obvious. Do you have that type of authority or responsibility? Does this Court have that type of authority? Do you? Does the PTO? Does the PTO have the authority to come up with a new grounds of rejection that was not raised by SBX? Is that the question? Yes. My understanding of the rule is that the Board may present a new ground of rejection, although it's not required to do so in every instance. In that respect, I think the situation is much different from what SBX describes in its QI controls in that, one, there are differences between the claims here that were not addressed by the Board's analysis of Claim 20. And two, Claim 20 on one hand and Claim 60 through 63 and 65 through 67 were not rejected as being obvious on similar or the same prior art. So if an argument that Claim 60 was obvious is never raised before the Board, should we deem that to be waived? If it was never raised before the Board, it should be waived. Well, let me tell you what the problem is with that. If you look at page 21 of the appendix, apparently the same thing was true with respect to Claim 20, that they didn't argue that rejection. And the Board says, our review of the rejection of Claim 20 under 103A is complicated by the fact that the patent owner has not argued the rejection. While this failure may be deemed to constitute a waiver, blah, blah, blah, and they still go ahead and reject it, reject Claim 20. Yes, Your Honor, but the difference here is that the Board was aware of the actual rejection. The rejection was on the record. There was no rejection on the record for Claim 60 through 63 and 65 through 67 based on that publication. You mean because in the case of Claim 20, the examiner had rejected it? Yes, Your Honor. But the examiner had never made the rejection for Claim 60 through 63 and 65 through 67. It's nowhere on the record. Okay. All right. Thank you. Thank you, Your Honor, and just in closing, the Board's decision should be affirmed. Thank you. Mr. Pataglia, we'll give you a minute here. Okay. Thank you, Your Honor. If I could just quickly clarify with respect to this argument now that it can be resolved without reaching all the issues. That's incorrect because the Board itself correctly determined that these three issues for each of the three terms were decided based on, quote, the representative claims I referred to earlier, representative claims to decide the outcome for the claims that were housed under each one. So with respect to axial seal, it identifies the 38 claims that rose or fell on a determination using Claim 21 as the representative claim. Same with the other limitations. So this Court does have to reach all three to address all 52 claims because all of those claims were categorized by the three terms. There are 38 claims with respect to axial seal determined on the basis of Representative Claim 21, seven claims with respect to spoked wheel determined with respect to Representative Claim 60, and another seven claims decided on the basis of movable all housed and categorized for deciding those seven claims. And this Court has held in Hyatt v. Dudas and other precedents that you can determine invalidity based on representative claims when they are so grouped. Okay. Mr. Pataglia, I think we're out of time. Thank you. Thank you, Your Honor. The case is submitted. Thank you, Your Honor.